Etan Z. Lorant, Esq., SBN: 108820
LAW OFFICES OF ETAN Z. LORANT
5850 Canoga Avenue, Suite 400
Woodland Hills, California 91367
(818) 990-3990

Attorneys for Plaintiffs, OFFICE OF MEDICAL AND SCIENTIFIC JUSTICE, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICE OF MEDICAL AND SCIENTIFIC JUSTICE, INC.<br><br>Plaintiff.<br><br>vs.<br><br>JAMES MURTAGH, M.D.<br><br>Defendant. | CASE NO.: CV 14-5538<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**<br>**28 U.S.C. §2201 et. Seq. and Fed. R. Civ. P. 57.** |

PLAINTIFF OFFICE OF MEDICAL AND SCIENTIFIC JUSTICE, INC., HEREINAFTER REFERRED TO AS "Plaintiffs", ALLEGE AS FOLLOWS FOR ITS CLAIMS FOR RELIEF:

## I
## JURISIDICTION

1. This Court has jurisdiction under The Federal Declaratory Judgment Act, 28 U.S.C. §2201 et. Seq. and Fed. R.Civ. P. 57; because the Plaintiff seeks a declaration that its use of the domain name, "jamesmurtaghmd.com" that it acquired in 2012, is not a trade name infringement/violation under the Lanham Act, see 15 U.S.C.A. §§1051 –1127 (West 2009), or a violation of the Anti-

-1-
COMPLAINT FOR DAMAGES

Cybersquatting Consumer Protection Act, 15 U.S.C. 1101. Et. Seq., contrary to the finding of a one-member panel of the World Intellectual Property Organizations. This action is an appeal of that decision as provided for in WIPO policies. The issues thus raise federal questions under 28 USC § 1331.

## II
## VENUE

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).

3. Plaintiff Office of Medical & Scientific Justice, Inc. (OMSJ) is a 501 (c) (3) non-profit public benefit corporation, formed and operating under laws of the State of California. In addition it is a licensed investigation agency in California specializing in the investigation of cases that involve medical and scientific corruption.

4. Defendant James Murtagh M.D. is a natural person, residing in Los Angeles, California 90048. Defendant not only resides in this district, but this is the district in which the Defendant asserted jurisdiction in his complaint filed with the World Intellectual Property Organization (WIPO).

## III
## STATEMENT OF FACTS

5. OMSJ is a non-profit corporation, managed by Clark Baker, a licensed private investigator (Baker), devoted to protecting and defending victims of scientific and medical corruption. Known in the industry as Junk Science, scientific and medical corruption takes many forms but generally involves the reluctance on the part of the state and federal governmental agencies to investigate and prosecute instances where science and medicine violate the law. The most apparent examples to the general public involve

pharmaceutical companies whose products generate billions of dollars in profits and even when sanctioned, pay only negligible fines in comparison to the harm they perpetuate.

6.  Among the range of services OMSJ provides and the people OMSJ protects are:

a.  Children, parents and others subjected to criminal, civil or administrative action used to enforce health department compliance (i.e. pharmaceutical, chemo, vaccine schedule etc.).Criminal, civil and UCMJ (military);

b.  Defendants charged with violations of health-related laws (i.e. criminal HIV cases);

c.  Parents of vaccine-injured children who are accused of "child abuse" or murder (i.e. "shaken baby syndrome");

d.  Researchers, doctors, students, and academics who become aware of ethical conflicts or corruption within research centers, universities, hospitals, and the pharmaceutical industry;

e.  Members of medical and scientific non-government organizations (NGOs);

f.  OMSJ conducts due diligence investigations for donors who fund research grants and gifts.

7.  One of OMSJ's areas of specialization is the exposure of people and organizations that are a threat to public health and safety. OMSJ raises public awareness either by postings to its own website, or in some instances to other sites it has legally acquired and operates. One such site is jamesmurtaghmd. OMSJ purchased that internet domain name in 2012. Thereafter, it used the domain name as a site to post documents pertaining to

COMPLAINT FOR DAMAGES

James Murtagh M.D. for the sole purpose of allowing the general public and any regulatory agencies to have a depository of information pertaining to Dr. Murtagh.

**B.     The domain name is not identical or confusingly similar to a trademark or service mark in which the Defendant has rights:**

8.     Defendant never challenged Plaintiff's use of the domain name as a violation of any trade or service mark. Plaintiff has owned and operated the registered domain name since September 2012 and the Defendant knew this to be the fact. The domain name has been open and obvious and not only has the Defendant never challenged the Plaintiff's use of the domain name, but he has never taken any steps on either a state or federal level to register "jamesmurtaghmd.com" either as a dba, trade name, trade mark, or other commonly recognized method of protecting identity rights or intellectual property. The Plaintiff's domain name does not compete with any other web-site or any federal or state recognized trade registration that belongs to the Defendant. The website does not pretend to be or represent James Murtagh MD.

9.     The website established under the domain name could not be clearer. It professes at the outset to be the unofficial site of Defendant and it contains no unsupported factual statements. The site is a depository for non-privileged public documents either created by the Defendant or that refer to legal proceedings of which he was a part. It is completely non-economic contrary to the assertions made by the Defendant. There is no economic link from "jamesmurtaghmd.com" to any other site. OMSJ is a licensed private investigation agency that derives its funds from legal defense services it provides for a fee to civil and criminal defense lawyers. Whether someone utilizes Defendant's medical

-4-
COMPLAINT FOR DAMAGES

services or not is irrelevant to OMSJ and Baker's livelihood as a licensed private investigator. As set out in the section that follows however, exposing Defendant as a tool of medical and scientific corruption is a function of OMSJ and it receives no compensation for this service. The domain name is an end unto itself and serves as a vehicle for the exercise of constitutionally protected speech as well as an organ by which the quality of health care and competency of medical providers, both of high public concern and interest, can be disseminated. Any assertion that Plaintiff is offering directly competing services to Defendant has no merit. There is no economic profit in the alleged AIDS debate for Plaintiff aside from the defense services it offers which do not challenge the existence or non-existence of AIDS, but rather raises questions and gathers evidence related to the misuse, misapplication, and misinterpretation of HIV tests and results, the evidence contained within the medical record, and the reliability of HIV testing in criminal assault cases where the existence of HIV infection in the Defendant is a key element of the crime. In any case, www.JamesMurtaghMD.com does not refer to anything related to HIV or AIDS.

10. In summary, the name is not in any way confusing because, although it is Defendant's name, it is not being confused with anything the Defendant has or does. James Murtagh MD maintains no web-site and has no company on the internet with which to confuse with Plaintiff's domain name. Plaintiff's domain name does not redirect anyone to a competing service. It offers documentary, factual information about Defendant. Citizens and the general public view the site. Plaintiff's business caters to a narrow clientele of criminal defense lawyers not to the general public to which the

disputed domain name and site are provided. The website at issue here is no different than a website that criticizes anyone of public notoriety, good or bad. The person's name and his likeness is not absolutely protected in instances of legitimate criticism.

**C.     Plaintiff has rights or legitimate interests in respect of the domain name:**

**(i)     First Amendment Free Speech**

11.    Plaintiff has a clear and legitimate right to use the domain name and the site in question. A civil judge has looked at this very issue and on December 6, 2013 Los Angeles Superior Court Judge Carol Boas Goodson said the following in rejecting Defendant's arguments that were almost identical those made in his WIPO complaint:

> "You know as well as I know, as well as everyone in this courtroom knows that one of the most basic rights under our constitution and one of our greatest freedoms is freedom of speech. And this is not a case of somebody yelling "fire" in a crowded theater where I can interfere easily with that right…"
>
> "(Baker) has a right as a citizen to contact hospitals. He has a right to post a website. He has a right to make comments by any social media, any public forum, anything of that nature… He's got a belief that Dr. Murtagh is a —   is engaging in a fraudulent practice based on his beliefs regarding HIV and AIDS."
>
> ***James Murtagh, M.D. vs. Clark Baker,*** Los Angeles Superior Court Case Number "BS145519" (December 6, 2013).

12.    As the Los Angeles Superior Court pointed out, OMSJ is exercising a legitimate freedom of speech and expression right as protected by the First Amendment to the Constitution.

13.    Defendant claims to be a researcher, publisher, public policy advocate, and doctor of some notoriety, licensed in 12 states and asserts the rights to James Murtagh MD as a

-6-

COMPLAINT FOR DAMAGES

domain name. The problem is as pointed out herein, that name is already legally and legitimately been registered by the Plaintiff. In addition, contrary to the assertions in the complaint that Defendant has developed substantial good will, in reality the opposite is true. Through his own actions and malfeasance Murtagh has developed a reputation that does not engender good will.

(ii) **Fair Use**

14. A review of the site shows it is purely informational. There is no economic message of any kind and Plaintiff is in no way trying to use Defendant's likeness as a source of generating income. The Plaintiff has a legitimate right to the use of the name where there is a legitimate noncommercial or fair use without intent to mislead consumers or tarnish the mark owner. In this case the site is not directed at consumers in the sense that Defendant and Plaintiff are competitors. It is not tarnishing a mark owner because there is no mark to tarnish. As set out above, Defendant has established no such mark.

15. For two years before Plaintiff received any notice of the dispute, Plaintiff used the domain name in connection with one of the bona fide services OMSJ provides. While there is no economic gain connected to the use of the domain name in dispute, it enables OMSJ to in part fulfill a mission statement of protecting the public from medical and scientific fraud. OMSJ derives no income from the public awareness aspect of its mission. Its income source is the services provided by an affiliate HIV Innocence Project, which provides legal defense support services for a fee. Case law is clear that services need not be fee driven or compensated in order to qualify as such. The term "services"

COMPLAINT FOR DAMAGES

has been interpreted broadly to include the dissemination of information, including purely ideological information, *United We Stand America, Inc. v. United We Stand America New York*, 128 F.3d 86, 89-90 (2nd Cir. 1997); *People for the Ethical treatment of Animals (PETA) v. Doughney*, 113 F. Supp. 2d 915 (U.S. D.C. E.D. Va., 2000). Therefore, Plaintiff's use of the domain name has been used to provide a not-for-profit service and as stated by Judge Carol Boas Goodsen, is being done in the context of a clear First$^t$ Amendment right to expose fraud in the medical profession. There can be no clearer example of fair use and the Defendant has conceded that such use has being taking place since 2012 when Plaintiff acquired the domain name.

16. The Plaintiff is therefore making a legitimate non-commercial or fair use of the domain name, without intent for commercial gain, misleadingly to divert consumers, or to tarnish the trademark(s) or service mark(s) at issue. Federal law defines "fair use," and under 17 USC §107 fair use is defined as:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

-8-
COMPLAINT FOR DAMAGES

> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17. If Plaintiff's site is scrutinized it does not make claims other than those supported by the documents that are the main feature of the site and therefore the domain name's main use. The documents are public records either created by the Defendant or about the Defendant. The site simply lists them and indicates that the information available points to fraudulent activity on the part of a member of the medical profession.

**D. The domain name has not been registered in bad faith and is not being used in bad faith:**

18. Defendant argues that because Plaintiff had openly opposed the Defendant prior to purchasing the domain name, that this is somehow evidence of bad faith. The argument has no merit. It is not even a policy consideration of WIPO and as set out herein above and below, the domain name and the site it supports provides pure information, information either generated through Defendant's own legal actions or through his tape recording of conversations.

**(i) Re-sale:**

19. The domain name was not registered or acquired primarily or secondarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the Defendant, as the alleged owner of the trademark or service mark, or to a competitor of the Defendant, for valuable consideration in excess of the Plaintiff's out-of-pocket costs directly related to the domain name. The domain name is not for sale and Plaintiff's goal in this proceeding is to keep the name, not sell it to Defendant or anyone else. It was acquired for the sole purpose of providing a forum to expose actual and potential medical fraud.

**(ii)    Exclusivity:**

20.    The domain name was not registered in order to prevent the Defendant from reflecting the mark in a corresponding domain name and, in connection therewith, the Plaintiff has not engaged in a pattern of such conduct. The Defendant may use James Murtagh MD at will and does so. In fact, if one Googles James Murtagh MD, a site created by and for James Murtagh comes up and Plaintiff has never, nor will he, seek to prevent Defendant's site from operating. Not only was the Domain name not acquired for such a purpose, but Defendant freely and readily uses the name virtually at will and Plaintiff does not in any way impede or try to prevent such use. More than a dozen other websites promote Defendant's name including vitals.com, healthcarecom.net, doximity.com, lifescript.com, linkedin.com, wordpress.com, manta.com, healthgrades.com, health.usnews.com, betterdoctor.com, angieslist.com, hipaaspace.com, and angel.co. As Defendant admits, the domain name in dispute here has a link of a favorable Defendant site.

**(iii)    Competition:**

21.    The Defendant and the Plaintiff are not competitors and/or the domain name was not registered by the Plaintiff primarily to disrupt the Defendant's business to the benefit of Plaintiff's business. The Defendant is a doctor and that is how he makes his living based on the admissions in his own complaint. Plaintiff is an investigation company that provides criminal defense support services and that is the source of Plaintiff's income. The domain name at issue contributes nothing to the Plaintiff's economic well-being. Its sole purpose is to provide a forum and platform to post documents and other material

-10-

COMPLAINT FOR DAMAGES

about or created by the Defendant. Contrary to the allegations of the Complaint that the site is somehow being used to debate the HIV/AIDS issue, neither HIV nor AIDS appears anywhere in the site, nor is the debate itself even mentioned.

**(iv)    Likelihood of Confusion:**

22.    Plaintiff did not register the domain name in an intentional attempt to attract for commercial gain, Internet users to the Plaintiff's web site or other on-line location, by creating a likelihood of confusion with the Defendant's mark as to the source, sponsorship, affiliation, or endorsement of the Plaintiff's web site or location or of a product or service on the Plaintiff's web site or location. No one is confused by the Plaintiff's web-site as being that of the Defendant, nor does the Plaintiff's web-site create any confusion with any mark of the Defendant. Plaintiff's domain serves as a source of pure criticism, and if defamation is the Defendant's assertion, he simply needs to point out what aspect of the site is untrue. What Defendant seeks to avoid is the reality that it is not the domain name or the site that apparently injures the Defendant's reputation, it is his own legal affairs and clandestine recording practices.  The site merely puts Defendant's actions up for public scrutiny. It is not the domain name or the site itself that allegedly harms the Defendant in his employment, but rather the documents that speak for themselves, that are public and are generated either by or about the Defendant.

23.    The domain site itself makes confusion impossible. It indicates immediately this is not Defendant's site, and the picture itself is merely an identifier. The Texas Medical Board for example was in fact directed to it and knew it was not Defendant's site. There was no confusion. Plaintiff is not a doctor and is not using "MD" to mislead anyone that

-11-

COMPLAINT FOR DAMAGES

he or his company is a medical service provider. Thus there is no economic competition and thus no legal basis for a claim of confusion or the likelihood thereof. The element of confusion that causes some form of dilution occurs only when one's trade name is used by another as "his own trade name," thereby weakening the plaintiff's ability to use the name as a unique identifier of its goods and services. It is undisputed that Plaintiff is not using "jamesmurtaghmd.com" as any kind of trade name. It is the name of a domain and web-site that as a Los Angeles Superior Court Judge has already made clear is being used in a constitutionally consistent manner to criticize.

24. Plaintiff is not trying to use of the trademark that attempts to capitalize on consumer confusion or to appropriate the cachet of one product for a different one. Plaintiff's site and domain name use present and past, original, primary documents concerning the Defendant. The links to Plaintiff OMSJ's site exist because the documents that appear on "jamesmurtaghmd.com" reside on or were downloaded from OMSJ's server, a fact that can be readily verified.

### (v) Other Alleged Indicia of Bad Faith

25. Although the Defendant might claim so, the domain name at issue here was not the basis of a groundless Texas Medical Board (TMB) complaint. The facts indicate otherwise. The TMB complaint was that Defendant had failed to notify the TMB of any administrative action against his license by any regulatory or professional body and under the Texas Medical Practice Act that failure is defined as unprofessional conduct. The Plaintiff merely raised the possibility that this had occurred and provided the TMB with the web-site address where it could make its own determination from a review of

-12-

Defendant's court records if he had in fact failed to properly disclose. Based on a review of the documents on the site, TMB initiated its own investigation. Its determination was that beyond the Court documents and the complaint there was not enough "other evidence in the form of …peer review documents, complaints, affidavits, or any documentary evidence supporting such allegations." The site allowed TMB to make its own determination to proceed and then determine if anything beyond what was not public could be obtained to support a failure to notify the TMB. However, the entire process was in no way bad faith, but the proper exercise of the use of public documents that could have been posted on any site and still have allowed the Plaintiff to direct a regulatory agency to that depository.

**D.     WIPO Complaint** [(TR) D2014-0711 <jamesmurtaghmd.com>]

26.     OMSJ operated the site for over two years. The Defendant did not and never has registered "jamesmurtaghmd.com" as either a state or a federally protected trademark name. On or about May 12, 2014, Defendant filed a complaint with WIPO. [(TR) D2014-0711 <jamesmurtaghmd.com>] Plaintiff filed a Motion to Dismiss and/or Abate and filed a response to the complaint. On July 9, 2014 the WIPO issued its one member panel decision upholding the Defendant's complaint and requiring the Plaintiff to turn the domain name over to the Defendant. However, the WIPO rules and polices provide, and the letter transmitting the decision emphasized that WIPO policy, Section 4 (k) states:

> **k. Availability of Court Proceedings.** The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the Defendant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an

-13-

COMPLAINT FOR DAMAGES

Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the Defendant in a jurisdiction to which the Defendant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Who is database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name.

27. Pursuant to the provisions of the WIPO polices, and based on clearly established Federal law, the review of a WIPO decision is de novo.

### FIRST CAUSE OF ACTION:
### Declaratory and Injuctive Relief under
### 28 U.S.C. §2201 et. Seq. and Fed. R. Civ. P. 57.

Plaintiff incorporates paragraphs 1-27 as if fully set out herein under and in addition would plead as follows:

28. In order for the Defendant to prevail on a trade name infringement under federal law he must plead and prove the following:

(a) it has a valid and legally protectable mark;

(b) it owns the mark; and

(c) the defendant's use of the mark to identify goods or services causes a likelihood of confusion.

Stated another way, Plaintiff must prove (1) that Plaintiff possesses a Mark; (2) that Defendant uses the Plaintiff's Mark; (3) that such use occurs in commerce; (4) in

-14-
COMPLAINT FOR DAMAGES

connection with the sale or offering for sale, distribution, or advertising of goods or services; and (5) in a way that is likely to cause confusion among consumers. 15 U.S.C. §§ 1114, 1125(a).

29.  28 USC §2201. Creation of remedy, states:

> (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The WIPO ruling and Defendant's filing of that complaint have created a legitimate case and controversy that involves the interpretation and application of federal laws (s). Plaintiff seeks a declaration by this Court that the ownership and use of the domain name "jamesmurtaghmd.com" is not a violation of 15 USC §1114 and/or §1125 (a).

30.  28 USC §2202. Further relief, states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

31.  Upon a favorable ruling on Plaintiff's declaratory judgment action, Plaintiff seeks an injunction against the Defendant, prohibiting him from in anyway trying to enforce the WIPO decision dated June 26, 2014 and issued July 9, 2014.

WHEREFORE, PLAINTIFF OFFICE OF MEDICAL AND SCIENTIFIC JUSTICE, INC. PRAY FOR JUDGMENT ON ALL CAUSES OF ACTIONS AGAINST THE DEFENDANT AS FOLLOWS:
1.  Plaintiff seeks a declaration by this Court that the ownership and use of the domain name "jamesmurtaghmd.com" is not a violation of 15 USC §1114 and/or §1125 (a).
2   Upon a favorable ruling on Plaintiff's declaratory judgment action, Plaintiff seeks an injunction against the Defendant, prohibiting him from in anyway

trying to enforce the WIPO decision [(TR) D2014-0711 <jamesmurtaghmd.com>] dated June 26, 2014 and issued July 9, 2014.

3    For costs of suit herein incurred;

4    For such other and further relief as the court deems just and proper.

Dated: July 15, 2014                  LAW OFFICES OF ETAN Z. LORANT

By: _____
ETAN Z. LORANT
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

The Plaintiffs in the above-entitled action request a trial by jury pursuant to Rule of the Federal Rules of Civil Procedure.

Dated: July 15, 2014                  LAW OFFICES OF ETAN Z LORANT

By: _____
ETAN Z. LORANT
Attorneys for Plaintiff